# United States Court of Appeals for the Federal Circuit

---

**BROOKLYN BREWERY CORPORATION,**
*Appellant*

**v.**

**BROOKLYN BREW SHOP, LLC,**
*Appellee*

---

2020-2277

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 91223982, 92062838.

---

Decided: October 27, 2021

---

JOHN JAY DABNEY, I, Snell & Wilmer LLP, Washington, DC, argued for appellant. Also represented by MARY HALLERMAN.

SEAN REEVES MARSHALL, Hoffmann Marshall Strong LLP, New York, NY, argued for appellee. Also represented by CHARLES DAVISON HOFFMANN.

---

Before DYK, O'MALLEY, and HUGHES, *Circuit Judges*.

DYK, *Circuit Judge*.

The Brooklyn Brewery Corporation ("Brewery") appeals a decision of the Trademark Trial and Appeal Board (the "Board"). Brewery petitioned to cancel Brooklyn Brew Shop, LLC's ("BBS") registration of the mark "BROOKLYN BREW SHOP," in standard characters, for goods identified as "Beer making kit[s]" in Class 32 (the "Cancellation"), and opposed BBS's application to register a stylized version of the same mark for beer-making kits in Class 32 and sanitizing preparations for household use in Class 5 (the "Opposition").

We affirm the Board's denial of Brewery's petition for cancellation. As for the Opposition, we dismiss the appeal as to the Class 5 goods for lack of standing. We vacate and remand in part because we find the Board erred by not entering judgment in favor of Brewery on the Class 32 goods deleted from BBS's application. As to the remaining goods in Class 32 (beer-making kits), we affirm the Board's dismissal of the claim that, under Section 2(d), the mark is likely to cause confusion. We vacate and remand with respect to the descriptiveness issue under Section 2(e)(1), because the Board erred by not reaching Brewery's claim that the applied-for mark lacked acquired distinctiveness under Section 2(f) as to the beer-making kits, but affirm the Board's refusal to consider geographic descriptiveness under Section 2(e)(2).

## BACKGROUND

Appellant Brewery is in the business of brewing and selling craft beer. Its beers, which include lagers, pilsners, and brown ales, are sold to thousands of retailers throughout the United States, including Whole Foods Market and Total Wine & More. For more than thirty years, Brewery has used the marks BROOKLYN and BROOKLYN BREWERY in connection with the advertising, promotion, and sale of Brewery's beer and beer-related merchandise. Among other registrations, Brewery owns Registration

No. 3,186,503 for BROOKLYN BREWERY for beer in Class 32,[1] registered in 2006.

As its name would suggest, appellee BBS was founded in Brooklyn, New York, in 2009. BBS is in the business of selling kits for making beer, as well as for wine and hard cider (hereinafter "beer-making kits"). Each kit contains brewing equipment, a cleaning sanitizer, and ingredients to make a one-gallon batch of a particular beer. BBS also sells accessories for its beer-making kits, including additional sanitizer packets. Although it began as a mom-and-pop shop selling kits at a local market, BBS's business has blossomed over the last ten years, now distributing beer-making kits in all fifty states. BBS sells its kits online and through retail stores such as Bed Bath & Beyond, Whole Foods Market, and Macy's. Between 2011 and 2015, Brewery and BBS partnered on a number of projects, including the sale of co-branded beer making kits.

On February 18, 2011, BBS applied for registration of the mark BROOKLYN BREW SHOP in standard character format in Class 32 for "Beer making kit[s]," claiming first use in March 2009. During prosecution, BBS disclaimed "exclusive right to use 'BROOKLYN BREW' apart from the mark," and on October 4, 2011, the U.S. Patent and

---

[1]   The various international trademark classes are established by the Committee of Experts of the Nice Union and set forth in the *International Classification of Goods and Services for the Purposes of the Registration of Marks* (10th ed. 2011), published by the World Intellectual Property Organization ("WIPO"). *See* USPTO, NICE AGREEMENT TENTH EDITION - GENERAL REMARKS, CLASS HEADINGS AND EXPLANATORY NOTES - VERSION 2012, https://www.uspto.gov/trademarks/trademark-updates-and-announcements/nice-agreement-tenth-edition-general-remarks-class.

Trademark Office ("PTO") issued Registration No. 4,034,439 on the Principal Register (the "'439 Registration"). J.A. 666.

Nearly three years later, on May 14, 2014, BBS filed U.S. Trademark Application Serial No. 86,280,776 (the "'776 Application") to register the mark BROOKLYN BREW SHOP, stylized as shown below:

**Brooklyn BrewShop**

Unlike the '439 Registration, which was limited to Class 32 for "Beer making kit[s]," the '776 Application sought registration for a wide variety of goods in Class 32. It identified:

> Alcohol-free beers; Beer; Beer making kit; Beer wort; Beer, ale and lager; Beer, ale and porter; Beer, ale, lager, stout and porter; Beer, ale, lager, stout, porter, shandy; Beer-based cocktails; Black beer; Brewed malt-based alcoholic beverage in the nature of a beer; Coffee-flavored beer; De-alcoholised beer; Extracts of hops for making beer; Flavored beers; Ginger beer; Hop extracts for manufacturing beer; Imitation beer; Malt beer; Malt extracts for making beer; Malt liquor; Non-alcoholic beer; Non-alcoholic beer flavored beverages; Pale beer; Porter; Processed hops for use in making beer; Root beer, in International Class 32.

J.A. 8, 669–72. It also sought registration for "Sanitizing preparations for household use, in International Class 5." J.A. 670. The application disclaimed "BREWSHOP" and

claimed acquired distinctiveness under Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f).[2]

In late 2015, Brewery filed a Petition for Cancellation of the '439 Registration and a Notice of Opposition to the '776 Application, which were consolidated by the Board. Brewery challenged the registered and applied-for marks based on the following violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*: (1) the marks were "likely to cause confusion" with Brewery's marks under Section 2(d), § 1052(d); and (2) the marks were merely descriptive under Section 2(e)(1), § 1052(e)(1), and lacked acquired distinctiveness under Section 2(f) at the time of registration.

In its answers, BBS denied Brewery's allegations and, as to the Section 2(d) (likelihood-of-confusion) claims, asserted the affirmative defenses of laches, acquiescence, and equitable estoppel based on the parties' "substantial coexistence without any confusion" or prior challenge to BBS's marks by Brewery. BBS also moved to amend the '776 Application to delete all but "Beer making kit[s]" from the goods identified under Class 32. Brewery opposed BBS's motion to amend and the Board deferred ruling on it. Brewery filed a motion for summary judgment on its petition to cancel the '439 Registration, raising for the first time a claim that the registered mark was primarily geographically descriptive under Section 2(e)(2) of the Lanham Act, 15 U.S.C. § 1051(e)(2). The Board found Brewery had not adequately pled the claim and denied summary judgment.

On August 10, 2020, the Board issued a final written decision denying the Petition for Cancellation and

---

[2]    BBS also sought registration for goods in Class 21 (beverage glassware). The Board sustained Brewery's opposition with respect to Class 21 and that determination is not at issue on appeal.

sustaining in part and rejecting in part the Opposition.  *See Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, Opp'n No. 91223982, 2020 WL 4673282, at \*35 (TTAB Aug. 10, 2020) ("*Decision*").  With respect to the Opposition, the Board (1) granted BBS's motion to amend the '776 Application to limit the Class 32 goods to "Beer making kit[s]" (but did not enter judgment in that respect); (2) rejected Brewery's Section 2(d) (likelihood-of-confusion) claim in the Opposition as to the Class 5 goods (sanitizing preparations) for failure to show likelihood of confusion, and rejected the Section 2(d) claim as to the remaining Class 32 goods (beer-making kits) in both the Cancellation and the Opposition because the defenses of laches and acquiescence applied and Brewery failed to prove inevitable confusion; (3) dismissed Brewery's geographic descriptiveness claims under Section 2(e)(2) on the ground that they had not been adequately pled; and (4) rejected Brewery's claims under Section 2(e)(1) (descriptiveness) for failure to establish that the marks were merely descriptive.

Brewery appeals.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

### DISCUSSION

### I.    Brewery's Standing as to the Class 5 Goods

BBS argues that Brewery lacks both Article III and statutory standing to appeal the Board's decision dismissing the Opposition as to the Class 5 goods (sanitizing preparations).  Although we have not yet had occasion to address Article III standing in a trademark case, our cases in the patent context have made clear that the statute does not set forth the exclusive test for standing when a decision of an administrative agency is appealed in federal court. The appellant must also satisfy the requirements of Article III.  *See, e.g.*, *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168 (Fed. Cir. 2017); *see also Consumer Watchdog v. Wis. Alumni Rsch. Found.*, 753 F.3d 1258, 1261 (Fed. Cir. 2014) ("[A]lthough Article III standing is not necessarily a

requirement to appear before an administrative agency [such as the TTAB], once a party seeks review in a federal court, 'the constitutional requirement that it have standing kicks in.'" (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002))). This is because Article III of the U.S. Constitution limits federal courts to hearing "Cases" or "Controversies," U.S. Const. art. III, § 2, cl. 1, and "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to [an appellant] who could not otherwise have standing," *Phigenix*, 845 F.3d at 1175 (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997)).

Accordingly, we must address Article III standing.

A

"To meet the constitutional minimum for standing, the party seeking to invoke federal jurisdiction must satisfy three requirements." *Consumer Watchdog*, 753 F.3d at 1260–61 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). First, the party must show that it has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted). Second, it must show that the injury is fairly traceable to the challenged action. *Id* at 560. And third, the party must show that it is "likely," rather than "merely speculative," that a favorable judicial decision will redress the injury. *Id.* at 561 (internal quotation marks omitted). Although certain of these requirements, "namely immediacy and redressability," may be relaxed "where Congress has accorded a procedural right to a litigant," *Consumer Watchdog*, 753 F.3d at 1261 (citing *Massachusetts v. EPA*, 549 U.S. 497, 517–18 (2007)), the "requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute," *id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)).

As the party seeking judicial review of the Board's decision in this case, Brewery is required to "supply the

requisite proof of an injury in fact" to satisfy the Article III standing requirements. *Phigenix*, 845 F.3d at 1172. The Supreme Court has held that an injury in fact must be both "concrete *and* particularized." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). Injuries that are "'conjectural' or 'hypothetical'" will not provide standing. *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Our cases in the patent area establish that "in order to demonstrate the requisite injury [for Article III standing] in an [inter partes review] appeal, the appellant/petitioner must show that it is engaged or will likely engage 'in an[] activity that would give rise to a possible infringement suit,'" *JTEKT Corp. v. GKN Auto. Ltd.*, 898 F.3d 1217, 1220 (Fed. Cir. 2018) (third alteration in original) (quoting *Consumer Watchdog*, 753 F.3d at 1262); that it "has contractual rights that are affected by a determination of patent validity," *id.*; or that it would suffer some other concrete and particularized injury. Speculation about "'*possible* future injury'" is not sufficient. *Momenta Pharms., Inc. v. Bristol-Myers Squibb Co.*, 915 F.3d 764, 767 (Fed. Cir. 2019) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)).

To establish injury in fact in a trademark case, an opposer must demonstrate a concrete and particularized risk of interference with the rights that flow to it from registration of its own mark, or some other Article III injury. This does not require that an opposer show that it faces a risk of potential trademark infringement liability, though that could be sufficient to establish standing. It may also establish standing by showing that if a mark is not canceled, or if an application is granted, the very registration and use of the mark would cause the opposer concrete and particularized harm.

Thus, the test for likelihood-of-confusion or descriptiveness purposes is whether the challenger and registrant compete in the same line of business and failure to cancel an existing mark, or to refuse registration of a new mark, would be likely to cause the opposer competitive injury. To be clear, an opposer cannot show standing by merely showing the registrant competes with the opposer and receives a benefit from an unlawful trademark. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 96–100 (2013) ("Taken to its logical conclusion, the theory seems to be that a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful—whether a trademark, the awarding of a contract, a landlord-tenant arrangement, or so on. We have never accepted such a boundless theory of standing."). A more particularized showing of harm is required. *Id.*

B

Here, Brewery never explains how granting the application to register the mark for sanitizing preparations in Class 5 would cause Brewery to suffer an Article III injury. To be sure, BBS's sanitizing preparations are used in connection with beer-making kits. But Brewery does not make or sell sanitizing preparations. The Board found that "sanitizing preparations are only peripherally related to beer-making kits, much less beer" and that there was no indication in the record that "[BBS's] sanitizing preparations for household use—particularly when sold individually—are likely to travel in the same channels of trade . . . as [Brewery's] beer." *Decision*, 2020 WL 4673282, at *20.

When pressed on this issue at oral argument on appeal, Brewery urged that it would suffer possible injury if it were ever to expand its business to the sale of sanitizing preparations. *See* Oral Arg. 02:50–02:57, available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20-2277_08302021.mp3. Brewery did not provide any details of a concrete plan for such expansion of its business, nor is

there anything in the record indicating that Brewery presently has such plans or any interest in making or selling sanitizing preparations. Such hypothetical future possible injury is insufficient to establish Article III standing. *See Spokeo*, 136 S. Ct. at 1548 ("To establish injury in fact, a[n appellant] must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, *not conjectural or hypothetical*.'" (emphasis added) (quoting *Lujan*, 504 U.S. at 560)); *see also JTEKT Corp.*, 898 F.3d at 1221 ("[W]here the party relies on potential infringement liability as a basis for injury in fact, but is not currently engaging in infringing activity, it must establish that it has concrete plans for future activity that creates a substantial risk of future infringement or [would] likely cause the patentee to assert a claim of infringement."). Because Brewery lacks Article III standing to oppose the '776 Application as to the sanitizing preparations under Class 5, we dismiss its appeal as to those goods.

BBS appropriately does not raise a challenge to Brewery's Article III standing to seek cancellation or oppose registration of its mark for beer-making kits.[3] Brewery need not prevail on the merits to establish standing. *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."); *see also Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 800 (2015) ("One must not 'confus[e] weakness on the merits with absence of Article III standing.'" (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011))). As the

---

[3]    BBS does characterize as a standing issue its argument that Brewery cannot challenge dismissal of the Opposition as to the beer-making kits if we affirm the Board's denial of the Cancellation, but that is more appropriately a merits issue, which we address below in Section IV.C.

BROOKLYN BREWERY CORPORATION v.                    11
BROOKLYN BREW SHOP, LLC

Board found, beer-making kits are related to beer and to some extent compete with beer since they are sold in many of the same stores. The Board found that "[t]he classes of consumers for [BBS's] beer-making kits and [Brewery's] beer [are] overlapping." *Decision*, 2020 WL 4673282, at *20. Although "[t]he population of beer drinkers willing to brew their own beer likely is small as compared to the overall population of beer drinkers," the Board observed, "they are nevertheless part of the same larger beer-drinking group." *Id.* The Board noted that BBS's marks were "more similar than dissimilar in overall appearance, sound, connotation, and commercial impression," *id.* at *24, and that Brewery submitted a "great deal" of evidence purporting to show many instances of actual confusion among consumers, *id.* at *25. Also, Brewery in the past was involved in the sale of co-branded beer-making kits. This is sufficient to establish Brewery's standing to challenge the existing and applied-for marks for beer-making kits.

C

We need not address statutory standing separately. The Supreme Court has clarified that there are certain issues that are discussed in terms of "standing" that are more appropriately viewed as requirements for establishing a statutory cause of action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). As relevant here, Section 13 of the Lanham Act provides:

> Any person who believes that he would be damaged by the registration of a mark upon the principal register, . . . may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor . . . .

15 U.S.C. § 1063(a); *see also id.* § 1071(a)(1) (allowing any "party to an opposition proceeding . . . dissatisfied with the decision of . . . the Trademark Trial and Appeal Board" to appeal to this court). In contrast to Article III standing,

where we are required to determine whether standing exists, *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006), the issue of whether a plaintiff has satisfied the statutory requirements need not be addressed if not raised by the parties, *see June Med. Servs. LLC v. Russo*, 140 S. Ct. 2103, 2117–18 (2020) (explaining that "prudential" standing arguments can be forfeited or waived). Since BBS has not raised the statutory issue with respect to Class 32 beer-making kits, we need not address whether Brewery has satisfied the statutory requirements in that respect.

II.    BBS's Motion to Amend the '776 Application

Brewery contends that the Board erred by failing to enter judgment against BBS on the Class 32 goods deleted from the '776 Application, including beer, when it granted BBS's motion to amend. Section 18 of the Lanham Act, 15 U.S.C. § 1068, gives the Board authority to, among other things, "modify the application or registration by limiting the goods or services specified therein." Pursuant to that authority, and in conjunction with a motion to amend, a defendant may assert an affirmative defense by moving to restrict its goods or services to avoid any likelihood of confusion alleged by the plaintiff. *See* 15 U.S.C. § 1068; 37 C.F.R. § 2.133; Trademark Trial & Appeal Board Manual of Procedure ("TBMP") § 514.

"In determining whether to accept a proposed amendment to an identification that, while contested, is otherwise acceptable, the Board looks to see whether" several circumstances are satisfied, including that the "applicant [] consent[s] to the entry of judgment on the grounds for opposition with respect to the broader identification of goods." *Johnson & Johnson v. Stryker Corp.*, 109 U.S.P.Q.2d 1077, 2013 WL 6664934, at *2 (TTAB 2013). BBS provided that consent here, and in response, the Board granted its motion to amend. The Board did not, however, enter the judgment to which BBS consented. Its failure to do so appears to be inadvertent and is

inconsistent with its practice. *See, e.g., Univ. of Ky. v. 40-0, LLC*, 2021 WL 839189, at \*10 (TTAB Mar. 4, 2021) (entering judgment for opposer on goods deleted from application). The purpose of entering judgment on the deleted goods is to "preclude [BBS] from seeking to register its mark at a later date for the goods . . . deleted from the original identification." *Int'l Harvester Co. v. Int'l Tel. & Tel. Corp.*, 208 U.S.P.Q 940, 1980 WL 30179, at \*2 (TTAB 1980). BBS makes no argument as to why entry of judgment on the deleted goods would be inappropriate, implying instead that formal entry of judgment is unnecessary. On remand, the Board should enter judgment in favor of Brewery as to the items deleted from the '776 Application.

### III.    Brewery's Likelihood-of-Confusion Claims

Brewery next argues that the '439 Registration for beer-making kits should be cancelled and the application to register the mark for beer-making kits should be denied because of likelihood of confusion. Under Section 2(d) of the Lanham Act, the PTO may refuse to register a trademark that so resembles a registered mark "as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d).

Before the Board, BBS successfully argued that the defenses of laches and acquiescence applied to Brewery's Section 2(d) claims in the Cancellation and as to the beer-making kits in the Opposition. The defense of laches in a trademark proceeding "requires a showing of undue delay in asserting rights against a claimant to a conflicting mark and prejudice resulting therefrom." *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Eds.*, 937 F.2d 1572, 1580 (Fed. Cir. 1991). And to establish acquiescence, the Board requires a defendant to prove that the plaintiff's conduct amounted to an assurance to defendant, "either express or implied[,] that plaintiff w[ould] not assert [its] trademark rights against the defendant." *CBS, Inc. v. Man's Day*

*Publ'g Co.*, 205 U.S.P.Q 470, 1980 WL 30129, at \*5 (TTAB 1980); *see also Coach House Rest. Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991) (setting forth test for acquiescence in trademark cases).

Here, the Board found that Brewery's more than four-year delay in bringing an action was unreasonable given that Brewery "was long aware of the nationwide sales of [BBS's] beer-making kits." *Decision*, 2020 WL 4673282, at \*14. Between 2011 and 2016, Brewery publicly collaborated with BBS on the sale of "co-branded beer-making kits, books on beer making, and educational programs on beer making." *Id.* at \*15. During that time, the Board found, "[Brewery] actively represented that it would not assert a right or a claim against [BBS's] use of its BROOKLYN [BREW] SHOP mark in connection with beer-making kits." *Id.* Finding no valid excuse for Brewery's delay in asserting its rights that could outweigh the material prejudice BBS would suffer from the delay, the Board held the defenses were applicable in this case.

As a result, Brewery could not overcome the defenses and prevail on its Section 2(d) claims as to the beer-making kits unless it established "inevitable confusion." *See Australian Therapeutic*, 965 F.3d at 1372; *see also Ultra-White Co., Inc. v. Johnson Chem. Indus., Inc.*, 465 F.2d 891, 893–94 (CCPA 1972) (finding six-year delay in filing a petition to cancel did not make a laches defense where confusion was inevitable). After a thorough review of the evidence, the Board concluded that Brewery failed to establish inevitable confusion and dismissed the Section 2(d) claims in both the Cancellation and Registration as to the beer-making kits.

A

On appeal, as to the '439 Registration, Brewery does not argue that the Board's determination that the defenses of laches and acquiescence were available to BBS was erroneous. Rather, it argues the Board erred in applying the

equitable defenses to the Opposition.  Laches and acquiescence are generally not available as defenses in an opposition proceeding, given that the clock for laches begins to run from the date the application is published for opposition.  *See Nat'l Cable Television Ass'n*, 937 F.2d at 1582.  This court has recognized an exception to that rule, however, where a "defense in an opposition . . . [is] based upon the Opposer's failure to object to an Applicant's registration of *substantially the same mark*."  *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992).  Thus, "a laches defense in an opposition proceeding may be based upon [an] opposer's failure to object to an applicant's earlier registration of substantially the same mark for substantially the same goods."  *Aquion Partners Ltd. P'ship v. Envirogard Prods. Ltd.*, 43 U.S.P.Q.2d 1371, 1997 WL 424968, at *3 (TTAB 1997).

Applying that standard to the facts of this case, the Board concluded that laches applied "as a defense in the opposition proceeding as to the beer-making kits."  *Decision*, 2020 WL 4673282, at *11 (citing *Aquion Partners*, 43 U.S.P.Q.2d at 1373).  We review the Board's ruling with respect to equitable defenses for abuse of discretion.  *Bridgestone/Firestone Rsch., Inc. v. Auto. Club de l'Quest de la France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001).  "Abuse of discretion will lie when the [Board's] decision rests on an error of law or on erroneous findings of fact, or if the decision manifests an unreasonable exercise of judgment in weighing relevant factors."  *Id.*

Despite the fact that, on its face, the registration and application contain substantially similar marks, Brewery argues the Board committed legal error in finding the marks substantially similar, because "[t]o secure registration of its BROOKLYN BREW SHOP mark, [BBS] disclaimed 'any exclusive rights' to the term BROOKLYN BREW 'apart from the mark shown,'" Appellant's Br. 47, whereas in the '776 Application, BBS "claimed section 2(f) acquired distinctiveness rights in BROOKLYN and

disclaimed BREW SHOP," *id.* at 48.  Accordingly, Brewery contends, its "supposed laches and acquiescence against [BBS's] registered mark that disclaims any rights to BROOKLYN should not prejudice [Brewery's] rights against an applied-for mark that claims rights to BROOKLYN."  *Id.*

The Board rejected this argument, explaining that "[t]he mark must [] be regarded as a whole, including the disclaimed matter, in evaluating similarity to other marks." *Decision*, 2020 WL 4673282, at \*11 n.74 (citing *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985)). "[A] disclaimer does not remove the disclaimed matter from the mark," nor does "a Section 2(f) claim . . . remove matter from the mark." *Id.*  In *National Data Corp.*, we held that "[t]he technicality of a disclaimer . . . has no legal effect on the issue of likelihood of confusion," because "[t]he public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO."  753 F.2d at 1059; *see also Specialty Brands, Inc. v. Coffee Bean Distribs., Inc.*, 748 F.2d 669, 672 (Fed. Cir. 1984) (disregarding the fact that the applicant had disclaimed the word "spice" apart from SPICE VALLEY for the purposes of likelihood-of-confusion analysis, because "the marks are viewed in their entireties").  The Board did not commit legal error in finding that the defense of laches was available in the opposition proceeding as to the beer-making kits, so its application of laches was not an abuse of discretion.

B

Even if laches or acquiescence applies, Brewery argues that it overcame the defense by establishing inevitable confusion.  We review the Board's conclusion that Brewery failed to prove inevitable confusion de novo and the factual findings underlying that determination for substantial evidence.  *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1365–66 (Fed. Cir. 2012).

BROOKLYN BREWERY CORPORATION v.                    17
BROOKLYN BREW SHOP, LLC

A showing of inevitable confusion requires that there be no reasonable doubt as to likelihood of confusion. *See Ultra-White Co.*, 465 F.2d at 893. Typically, only where both the goods and marks are nearly identical is that standard satisfied. *See Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 339 (Fed. Cir. 1997) ("[C]onfusion was 'so likely that it [wa]s virtually inevitable, because the parties [we]re using the identical mark for the identical services.'"); *Ultra-White Co.*, 465 F.2d at 892–93 (finding confusion inevitable for "identical term 'BRIGHTWHITE' or 'BRIGHT WHITE' for the specified goods"); *In re Nat'l Distillers & Chem. Corp.*, 297 F.2d 941, 943 (CCPA 1962) (finding differences between MARQUES DEL MERITO and MERITO for the non-identical goods wine and rum were "sufficient to raise a doubt as to the likelihood of confusion, mistake or deception of purchasers arising from the common use of the word MERITO"). But in some cases, confusion has been shown where the marks or goods are not identical. *See, e.g., Standard Oil Co. (N.J.) v. Epley*, 40 F.2d 997, 999 (CCPA 1930) (finding confusion inevitable for "the words EPCO and ESSO . . . [w]hen applied upon identical goods").

Substantial evidence supports the Board's finding that, although the marks BROOKLYN BREWERY and BROOKLYN BREW SHOP are substantially similar, they are not nearly identical, nor are the goods. As the Board observed, "beer and beer-making kits are not interchangeable goods because making beer from a kit takes weeks and the kits cannot be sold for immediate consumption of beer." *Decision*, 2020 WL 4673282, at *19 (internal quotation marks and citation omitted). Under our case law, once the Board made the determination that neither the marks nor the goods were nearly identical, it is not clear that any further analysis was required to reject an inevitable confusion claim. Nevertheless, the Board went on to address the

various *DuPont* factors[4] and rejected Brewery's argument and evidence that the marks cause actual confusion. Brewery disputes that conclusion on appeal. Assuming without deciding that such evidence would be relevant to inevitable confusion (when both the marks and goods are not identical), we see no legal error in the Board's ultimate analysis, and its underlying findings of fact are supported by substantial evidence.

After carefully evaluating the evidence as applied to the seventh and eighth *DuPont* factors—the nature and extent of any actual confusion, and the length of time during and conditions under which there has been concurrent use without evidence of actual confusion—the Board found those factors were at most neutral. Although, as the Board recognized, Brewery presented "voluminous evidence of actual confusion from its current and former employees, . . . documents produced in discovery, and an array of third-party sources," Appellant's Br. 52, that evidence has significant shortcomings.

As the Board found, the majority of the evidence purporting to show actual confusion is from the time period when the parties were actively collaborating on co-branded beer-making kits. Between early 2012 and 2016, the parties sold two co-branded kits, manufactured by BBS based on Brewery's recipes, which "prominently featured both parties' marks." *Decision*, 2020 WL 4673282, at *9. They also publicly participated in several joint promotional events for the co-branded kits. Accordingly, as the Board explained, "although some customers may have been confused as to whether the companies were affiliated, they cannot have been confused as to the source of the goods

---

4    Issues of confusion, whether inevitable or likely, are determined by assessing the factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (CCPA 1973).

because both parties were in fact the source of the goods." *Id.* at \*30; *see also id.* (citing *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1077 (9th Cir. 1995) (holding that where a party places a "collective mark on its products, it is primarily responsible for any confusion that result[s] from the mark's assertion of affiliation, and that confusion cannot be used to support a charge of infringement")).

Substantial evidence supports the Board's finding that "[t]he evidence occurring during the co-branded period [wa]s [thus] not evidence of actual confusion." *Id.* at \*31. Likewise, substantial evidence supports the Board's finding that "the remaining examples [of purported actual confusion were] too infirm to constitute evidence upon which [it could] accord sufficient probative value to make a finding of actual confusion." *Id.*

Accordingly, we see no legal error in the Board's ultimate conclusion that Brewery failed to establish inevitable confusion as to the beer-making kits, and in the Board's rejection of the likelihood-of-confusion claims.

## IV.    Brewery's Descriptiveness Claims

### A

Brewery argues that the Board abused its discretion in refusing to consider its geographic descriptiveness claim against the '439 Registration. The equitable defenses of laches and acquiescence are not available against claims of descriptiveness. *See W. D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 146 U.S.P.Q. 313, 1965 WL 7807 (TTAB 1965), *aff'd*, 377 F.2d 1001 (CCPA 1967) ("[I]t is well established that the equitable defense of estoppel and laches is not available to a defendant in a proceeding wherein[] . . . the adverse party is claiming in essence that the mark in

question inherently cannot function as a trademark under the trademark statute.").[5]

Section 2(e)(2) of the Lanham Act bars registration of a mark which is "primarily geographically descriptive" of the goods to which it is applied. 15 U.S.C. § 1052(e)(2). The Board found Brewery had not adequately pled the claim. In a footnote to its summary judgment decision, the Board advised Brewery that "[a]bsent a motion to amend the pleadings, both the cancellation and opposition proceedings will go forward without the primarily geographically descriptive claim." J.A. 900 n.5. Brewery did not amend its pleadings.

In its brief after trial, Brewery again raised its Section 2(e)(2) claim. Even though Brewery had failed to amend its pleadings, the Board nevertheless considered whether the Section 2(e)(2) claim had been tried by implied consent because Brewery presented evidence of geographic descriptiveness without objection. *See* J.A. 14 (citing Fed. R. Civ. P. 15(b)). We review the Board's decision regarding whether an issue was tried by implied consent for abuse of discretion. *See Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 750 F.2d 1552, 1566 (Fed. Cir. 1984). We find the Board acted within its discretion.

The Board first observed there was no express consent, because BBS objected to consideration of the claim. Where

---

[5]    This is based on the principle that "the public interest is not served by allowing [merely descriptive or] primarily geographically descriptive marks to become or remain registered based on the action or inaction of any single person or concern." *Ohio State Univ. v. Ohio Univ.*, 51 U.S.P.Q.2d 1289, 1292 (T.T.A.B. 1999). *See generally* 3 McCarthy on Trademarks and Unfair Competition § 20:36 (5th ed.).

the non-offering party raises such an objection, implied consent can only be found where evidence supporting the claim was submitted without objection and the non-offering party was fairly apprised that the evidence was being offered in support of the claim at issue. *See* TBMP § 507.03(b); *see also Citigroup Inc. v. Cap. City Bank Grp., Inc.*, 94 U.S.P.Q.2d 1645, 1656 (TTAB 2010), *aff'd*, 637 F.3d 1344 (Fed. Cir. 2011) (articulating standard under the TBMP). The TBMP provides that "there must be an absence of doubt that the nonmoving party is aware that the issue is being tried." TBMP § 507.03(b). Here, Brewery introduced evidence of the geographic descriptiveness of the term "Brooklyn."

Brewery argues implied consent based on a stipulation between the parties that the summary judgment record would be part of the trial record and Brewery's subsequent notice of reliance on the summary judgment record. But neither the stipulation nor the notice of reliance indicated for what purpose Brewery intended to rely on the evidence. The Board observed that none of Brewery's testimony or evidence at trial "included any clear indication to [BBS] that a primarily geographic descriptiveness claim was being tried," J.A. 15, because Brewery's Section 2(e)(1) claim also relied in part on geographic significance. It was therefore not clear that Brewery intended that evidence to support the Section 2(e)(2) claim, especially after Brewery failed to amend the pleadings to include the claim after being expressly warned that its failure to do so would result in the claim not proceeding to trial.

We thus agree with the Board that BBS was not "fairly apprised" of the Section 2(e)(2) claim, and therefore the claim was not tried by implied consent. The Board did not abuse its discretion in refusing to consider Brewery's Section 2(e)(2) claim.

B

Brewery next argues that substantial evidence does not support the Board's finding that it had failed to prove the registered mark was merely descriptive under Section 2(e)(1), a claim that was properly raised before the Board. Section 2(e)(1) of the Lanham Act provides that a trademark may be refused registration if it consists of a mark that, "when used on or in connection with the goods of the applicant[,] is merely descriptive of the goods." 15 U.S.C. § 1052(e)(1). "A mark is merely descriptive 'if it immediately conveys knowledge of a quality, feature, function, or characteristic of the goods or services with which it is used.'" *Coach Servs., Inc.*, 668 F.3d at 1377–78 (quoting *In re Bayer Aktiengesellschaft*, 488 F.3d 960, 963 (Fed. Cir. 2007)). Whether a mark is descriptive is a question of fact that we review for substantial evidence. *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 1364–65 (Fed. Cir. 2018).

The parties disagree as to the proper burden of proof in this case. A mark registered on the Principal Register is presumed to be valid. 15 U.S.C. § 1057(b). "Due to this presumption of validity, the burden of persuasion in a cancellation proceeding rests on the party seeking to cancel the registration." *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir. 2009). Where, as here, the mark is registered without a Section 2(f) claim of acquired distinctiveness, the mark is presumed to be inherently distinctive. *See* 2 McCarthy on Trademarks and Unfair Competition § 11:43 n.3 (5th ed.) (citing cases). To overcome that presumption, the burden is on the party seeking to cancel the registration—in this case Brewery— to show by a preponderance of the evidence that the mark was not inherently distinctive, but instead merely descriptive. *See StonCor Grp., Inc. v. Specialty Coatings, Inc.*, 759 F.3d 1327, 1332 (Fed. Cir. 2014).

We have explained that "the question [for whether a mark is descriptive] is whether [a consumer] who knows

what the goods and services are will understand the mark to convey information about them." *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1254 (Fed. Cir. 2012). On the other hand, a mark is not descriptive, but is instead "suggestive," if it "requires imagination, thought and perception to reach a conclusion" about the nature of the goods. *Id.* at 1252 (quoting *In re Abcor Dev. Corp.*, 588 F.2d 811, 814 (CCPA 1978)).[6] "If the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." 2 McCarthy on Trademarks and Unfair Competition § 11:67 (5th ed.).

Applying those principles here, the Board found Brewery failed to overcome the presumption of validity by proving that the registered mark was merely descriptive under Section 2(e)(1). In so finding, the Board observed that BBS's marks "would not be perceived by [] prospective customers seeking brewing supplies and accessories as describing a 'quality, feature, function, or characteristic' of the goods." *Decision*, 2020 WL 4673282, at *34. Substantial evidence supports the Board's determination.

Brewery contends that the Board's finding that "BREW SHOP describes a place to buy brewing supplies," *id.* (internal quotation marks omitted), equates to a finding that the mark "is merely descriptive of beer-making kits and not inherently distinctive," Appellant's Br. 31. We disagree. Descriptiveness is not evaluated "in the abstract," or broadly as to the class of goods that the applicant sells (brewing supplies), but rather it must be evaluated "in relation to the particular goods for which registration is

---

[6] "A suggestive mark qualifies for registration without secondary meaning." *In re Nett Designs, Inc.*, 236 F.3d 1339, 1341 (Fed. Cir. 2001).

sought." *Coach Servs., Inc.*, 668 F.3d at 1378 (internal quotation marks omitted).

A "descriptive mark . . . is one that 'conjure[s] up the image' of the precise good with which it is associated." *Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 163 (2d Cir. 2016) (quoting *Playtex Prods., Inc. v. Ga.–Pac. Corp.*, 390 F.3d 158, 164 (2d Cir. 2004), *superseded by statute on other grounds as recognized in Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 107–08 (2d Cir. 2009)). Here, BREW SHOP does not conjure up an image of a "beer-making kit" specifically. One can imagine any number of goods that might be purchased at a "place to buy brewing supplies," J.A. 75, including beer brewing equipment, testing and measuring devices, and beer ingredients. A "beer-making kit" does not immediately come to mind.

We therefore find the Board's conclusion that the presumption of inherent distinctiveness as to the registered mark was not overcome is supported by substantial evidence.

C

Finally, we consider whether BBS was required to establish that the applied-for mark had acquired distinctiveness in order to register the mark.[7] "Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the *statute* accepts a lack of inherent distinctiveness as an established fact." *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1580 (Fed. Cir. 1988); *Cold War Museum, Inc.*, 586 F.3d at 1358

---

[7]    Because BBS did not seek registration of its original mark under Section 2(f), and because Brewery failed to rebut the presumption that the registered mark is inherently distinctive, the Board was not required to reach the issue of acquired distinctiveness in the cancellation proceedings.

("Where an applicant seeks registration on the basis of Section 2(f), the mark's descriptiveness is a nonissue," because the mark is presumed to be "descriptive."). The applicant may nevertheless register the presumptively descriptive mark under Section 2(f) if it can prove the mark "has become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052(f).

In contrast to an opposition involving Section 2(e), where the burden of persuasion is on the opposer, we have held that "the ultimate burden when registration is sought under Section 2(f) is properly placed on the applicant." *Yamaha Int'l Corp.*, 840 F.2d at 1580. This is because, we have explained, Section 2(f) "is a provision under which an applicant has a chance to prove that [it] is entitled to a federal trademark registration which would otherwise be refused." *Id.* Here, the Board made no findings concerning acquired distinctiveness as to the '776 Application. Because proof of acquired distinctiveness was required to register the mark under Section 2(f), we find the Board erred by not considering whether BBS had satisfied its burden.

BBS contends that the Board did not need to address the acquired distinctiveness issue because, once the Board denied Brewery's petition for cancellation, the *Morehouse* defense barred a challenge to the Opposition for "essentially the same mark and same goods." Appellee's Br. 48 (citing *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 884 (CCPA 1969)). The *Morehouse* defense is premised on the fact that an individual damaged by an existing registration "cannot suffer legal damage from [an] additional registration, over and above any damage it may suffer from [an] existing registration" for essentially the same mark and same goods. *Morehouse Mfg. Corp.*, 407 F.2d at 884.

Here, Brewery has shown that it would potentially suffer additional harm from the applied-for mark than that which is caused by the registered mark. To secure

registration of its BROOKLYN BREW SHOP mark, BBS disclaimed "any exclusive rights" to the term BROOKLYN BREW "apart from the mark shown." J.A. 654–55. "Disclaiming unregistrable components prevents the applicant from asserting exclusive rights in the disclaimed unregistrable terms." *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1335 (Fed. Cir. 2015). In the '776 Application, in contrast, BBS claimed Section 2(f) acquired distinctiveness rights in BROOKLYN BREW SHOP and disclaimed BREWSHOP. Therefore, because BBS's applied-for mark claims rights to BROOKLYN and the registered mark disclaims rights in BROOKLYN BREW, the harm the two marks cause to Brewery's BROOKLYN and BROOKLYN BREWERY marks is potentially different. The *Morehouse* defense does not apply. [8]

Apart from the *Morehouse* defense, BBS does not argue that it is free from the requirement that it establish acquired distinctiveness to register a mark under Section 2(f). Accordingly, we vacate the Board's order dismissing the Opposition and remand for the Board to determine whether BBS has shown that the applied-for mark has acquired distinctiveness as to the beer-making kits.

---

[8]    We observe that the Board has held that the *Morehouse*, or "prior registration," defense is unavailable in proceedings predicated on whether a merely descriptive mark has acquired distinctiveness, "because of the overriding public interest in precluding the registration of a merely descriptive designation." *See Performance Open Wheel Racing, Inc. v. U.S. Auto Club Inc.*, Opp'n No. 91229632, 2019 WL 2404075, at \*13–14 (TTAB 2019). We need not reach that issue here, however, as we find the defense inapplicable for another reason.

CONCLUSION

We affirm the Board's denial of Brewery's petition for cancellation. As to the Opposition, we dismiss the appeal regarding the Class 5 goods. The Board on remand shall enter judgment for Brewery on the Class 32 goods deleted from the '776 Application by amendment. As to the beer-making kits under Class 32, we affirm in part and remand to the Board in part for further proceedings consistent with this opinion.

**DISMISSED IN PART, AFFIRMED IN PART, VACATED IN PART, REMANDED**

COSTS

Each party shall bear its own costs.