**LINCOLN LOGS LTD., Appellant,**

v.

**LINCOLN PRE–CUT LOG HOMES, INC., Appellee.**

No. 91–1367.

United States Court of Appeals, Federal Circuit.

Aug. 4, 1992.

Rehearing Denied Sept. 16, 1992.

Simor L. Moskowitz, Fleit, Jacobson, Cohn, Price, Holman & Stern, Washington, D.C., argued, for appellant. With him on the brief, was John E. McKie.

Robert A. Jensen, Jensen & Puntigam, P.S., Seattle, Wash., argued, for appellee.

Before NIES, Chief Judge, MAYER and LOURIE, Circuit Judges.

NIES, Chief Judge.

Lincoln Logs Ltd. (Applicant) appeals from the August 31, 1990, decision in Opposition No. 80,889, by the United States Patent and Trademark Office Trademark Trial and Appeal Board (TTAB), adhered to on reconsideration by Order of March 5, 1991. The TTAB sustained the opposition by Lincoln Pre–Cut Log Homes, Inc., (Opposer) to registration by Applicant of the following mark for prefabricated homes:

Opposition is based on Opposer's prior registration of the word mark LINCOLN for essentially identical goods, Registration No. 1,160,018, issued March 7, 1981. We affirm.

## BACKGROUND

On March 4, 1988, Applicant filed the application at issue in this appeal (Serial No. 73/714,789) seeking registration of the above depicted mark, for "prefabricated home systems comprising solid timber walls, floor and room trusses and panels, windows and doors" (hereinafter current LINCOLN mark). All wording of the mark is disclaimed except for THE and LINCOLN. In its opposition, Opposer asserted that Applicant's mark was likely to cause confusion with its registered mark, LINCOLN,[1] for "building kits comprising pre-cut logs and instructions for erecting a home used for human habitation," and was, therefore, unregisterable under 15 U.S.C. § 1052(d).[2] On Opposer's motion for summary judgment, the TTAB held that: (1) there could be no issue regarding priority of use because the opposition is based on a registered mark; (2) the goods for which the parties' marks are used are identical; and (3) confusion with Opposer's mark LINCOLN would be likely because LINCOLN is the distinguishing feature of Applicant's mark, the design feature being of slight significance.

Applicant does not contest the Board's conclusion of likelihood of confusion were the facts limited to its use of the current LINCOLN mark. But this does not end the matter. Applicant submitted an affidavit that it has used and had registered the following mark since prior to Opposer's use and registration of its mark:

(Hereinafter, the "LINCOLN/Profile" mark.)

1. Opposer's registration is dated July 7, 1981, and specified a first use of the mark LINCOLN on November 30, 1978. The registration had become incontestable prior to the opposition.

2. 15 U.S.C. § 1052 provides in pertinent part: No trademark ... shall be refused registration on the principal register on account of its nature unless it—

(d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake or to deceive....

The parties do not dispute that Applicant has made continuous use of the LINCOLN/Profile mark for the 13 years preceding the TTAB's decision in this case, and that Opposer sent a cease and desist letter to Applicant in March 1984, respecting a conflict with that mark. That letter informed Applicant of Opposer's registration of LINCOLN as its mark for home building kits and demanded that Applicant cease the use of "Lincoln" in connection with its similar business. In response, Applicant informed Opposer of its long use and federal registration of the LINCOLN/Profile mark. Nothing further was heard from Opposer. Applicant bases its equitable defenses of laches and estoppel on this exchange of correspondence and Opposer's inaction thereafter.

The TTAB held that the Applicant's two LINCOLN marks were not "legal equivalents." *See, e.g., National Bakers Servs., Inc. v. Hain Pure Foods Co., Inc.,* 207 USPQ 701 (TTAB 1980). Based upon this conclusion, the TTAB rejected Applicant's equitable defenses.

## ANALYSIS

Summary judgment is appropriate when the movant has established that there is no genuine issue as to any material fact and that, under those facts, the movant is entitled to judgment as a matter of law. *National Cable Television Ass'n, Inc. v. American Cinema Editors, Inc.,* 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427 (Fed.Cir. 1991). On appeal, this court reviews the propriety of the summary judgment grant *de novo. Id.*

While laches and estoppel are entirely separate defenses, (*see A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 22 USPQ2d 1321 (Fed.Cir.1992) (*in banc*)), in this case both defenses turn on essentially the same facts. And these facts are not in dispute.

■ The elements of laches are (1) unreasonable delay in assertion of one's rights against another; and (2) material prejudice to the latter attributable to the delay. The elements of equitable estoppel are (1) misleading conduct, which may in-

clude not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted. *Aukerman,* 960 F.2d at 1028, 22 USPQ2d at 1324–25. As applied in trademark opposition or cancellation proceedings, these defenses must be tied to a party's registration of a mark, *not* to a party's use of the mark. *National Cable Television,* 937 F.2d at 1581, 19 USPQ2d at 1431; *see also In re Wella, A.G.,* 787 F.2d 1549, 1554, 229 USPQ 274, 278 (Fed.Cir.1986) (Nies, J., additional views) (right to use and right to register are "separate and distinct").

■ Inasmuch as Opposer has acted at its first opportunity to object to registration of Applicant's current LINCOLN mark and made no representation to Applicant that it would not so oppose, Applicant would appear to have no basis for either a laches or estoppel defense against Opposer respecting the application in issue. However, under certain circumstances, a laches or estoppel defense in an opposition (or cancellation) proceeding may be based upon the Opposer's failure to object to an Applicant's registration of *substantially the same mark.* See *Copperweld Corp. v. Astralloy–Vulcan Corp.,* 196 USPQ 585, 590–91 (TTAB 1977) (laches applied in opposition to registration of mark ASTRALLOY-V based upon Opposer's failure to object to Applicant's registration of mark ASTRALLOY).

Applicant asserts that this principle applies in this case. Per Applicant, Opposer is charged with knowledge of Applicant's assertion of rights in LINCOLN as part of a mark (*i.e.,* the LINCOLN/Profile mark) from the time of its registration in 1983; Opposer, in fact, objected to Applicant's use of that mark in 1984; Opposer unreasonably delayed taking any legal action against Applicant's claim to a LINCOLN mark until this opposition; and Applicant relied on and was prejudiced by Opposer's silence and inaction. Applicant asserts

these facts show laches (unreasonable delay and prejudice) and estoppel (the misrepresentation being that Opposer would never challenge Applicant respecting rights in LINCOLN when, after sending a cease and desist letter, it took no further action).

To give viability to its equitable defense, Applicant argues that the LINCOLN/Profile mark and its current LINCOLN mark are essentially the same, both being dominated by LINCOLN or LINCOLN LOGS and, therefore, both creating the same commercial impression. Thus, per Applicant, the two marks should be treated as one, and laches and equitable estoppel should be resolved on the basis of events relating to the LINCOLN/Profile mark.

The right to "tack" one's rights respecting one mark onto another was explained in *Van Dyne–Crotty, Inc. v. Wear–Guard Corp.*, 926 F.2d 1156, 1159, 17 USPQ2d 1866, 1868 (Fed.Cir.1991). As stated therein, "However, for the purposes of 'tacking,' even if the two marks are confusingly similar, they still may not be legal equivalents. Instead, the marks must create 'the same, continuing commercial impression,' and the later mark should not materially differ from or alter the character of the mark attempted to be 'tacked'." *Id.* (citations omitted). The Board applied this test to determine whether rights from Applicant's use of the LINCOLN/Profile mark may be deemed to carry over to its current LINCOLN mark and it held that Applicant's two marks do not meet that test.

■ While we do not disagree with the Board's conclusion, the asserted defenses of laches and estoppel fail as a matter of law by reason of Applicant's failure to establish a necessary element of each defense (even if the marks were legally equivalent). Applicant argues that Opposer should have taken legal action against its LINCOLN/Profile mark in May 1984. However, in response to Opposer's cease and

desist letter in 1984, it cannot be overlooked that *Applicant* asserted *priority* over Opposer with respect to the rights in a LINCOLN mark.[3] Indeed, Applicant argues in its brief to us that Opposer could have done nothing vis-à-vis its use or registration of the LINCOLN/Profile mark because of Applicant's priority in use. Opposer can not be held guilty of unreasonable delay in failing to take action to protect its rights if it had no rights to protect vis-à-vis Applicant at that time. Thus, the defense of laches fails because there was no delay in assertion of paramount rights by Opposer. In 1984, Opposer's rights were then limited to rights based on the common law and were subservient to Applicant's rights, if we take Applicant at its word.

■ Similarly, while estoppel may be based on misleading inaction or silence where there is a duty to act, it is fatuous to argue that Opposer should lose in this proceeding because it was obligated to bring a suit for infringement or initiate a cancellation proceeding against Applicant's superior rights. Inasmuch as Applicant knew that Opposer's nonaction was attributable to Applicant's own assertions of prior rights in LINCOLN, Opposer's nonaction cannot be deemed a misleading representation that it would never assert rights against Applicant with respect to any variation of a LINCOLN mark, should Opposer become entitled to do so.

Opposer's right to prevail in this proceeding arises from the particular provisions of the Lanham Act that are designed to encourage registration of marks. Opposer took advantage of those provisions. Applicant did not. Applicant, as prior user, could and should have taken steps to prevent registration by Opposer of the mark LINCOLN. It had an opportunity to oppose or petition to cancel Opposer's registration during a period of more than five

---

3. Richard Considine, Applicant's President and CEO, averred that:

Upon receipt of the Bassett and Morrison letter (Exhibit B), I contacted that law firm and advised that Lincoln Logs Ltd. had been using LINCOLN LOGS LTD. AND DESIGN and THE ORIGINAL LINCOLN LOGS LTD. AND DE- SIGN as a trademark and/or trade name since 1977/1978, before use of "Lincoln" by Lincoln Pre–Cut Log Homes, and that Lincoln Logs Ltd. itself owned a federal registration for its trademark LINCOLN LOGS LTD. AND DESIGN.

**736**

years and failed to avail itself of that opportunity. 15 U.S.C. §§ 1063, 1064. The statute now precludes Applicant from attacking Opposer's registration (except on limited grounds), 15 U.S.C. § 1064, and from registering a mark which is likely to cause confusion with that registered mark, 15 U.S.C. § 1052(d). The objective of the statute, to afford benefits to registrants, would be subverted were we to favor a nonregistrant over a registrant in the circumstances of this case.

## OTHER ISSUES

No other issues require extended discussion. Applicant asserts, *inter alia,* that the Board improperly denied it discovery pertaining to its equitable defenses. Like the Board, we are unpersuaded that discovery concerning these defenses would serve any useful purpose. Applicant argues that there is a dispute whether its long use does not outweigh other factors respecting the conclusion of likelihood of confusion. However, there is not an evidentiary dispute respecting a material fact. Applicant simply disagrees with the Board's conclusion on the facts. Thus, there is no impediment to summary judgment.

## CONCLUSION

For the foregoing reasons, we *affirm* the final decision of the Trademark Trial and Appeal Board sustaining the opposition.

AFFIRMED.