# United States Court of Appeals for the Federal Circuit

2009-1473
(Opposition No. 91/182,173)


ODOM'S TENNESSEE PRIDE SAUSAGE, INC.,

Appellant,

v.

FF ACQUISITION, L.L.C.,

Appellee.


Marsha G. Gentner, Jacobson Holman PLLC, of Washington, DC, argued for appellant.

Scott W. Johnston, Merchant & Gould P.C., of Minneapolis, Minnesota, argued for appellee.

Appealed from: United States Patent and Trademark Office
Trademark Trial and Appeal Board

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-1473
(Opposition No. 91/182,173)


ODOM'S TENNESSEE PRIDE SAUSAGE, INC.,

Appellant,

v.

FF ACQUISITION, L.L.C.,

Appellee.


Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Opposition No. 91/182,173.

_____

DECIDED: March 19, 2010
_____


Before MAYER, GAJARSA, and LINN, <u>Circuit Judges</u>.

MAYER, <u>Circuit Judge</u>.

Odom's Tennessee Pride Sausage, Inc. ("Odom's") appeals the decision of the United States Patent and Trademark Office, Trademark Trial and Appeal Board granting summary judgment in favor of FF Acquisition, L.L.C. ("FF") and dismissing Odom's opposition to a trademark application filed by FF. <u>Odom's Tenn. Pride Sausage, Inc. v. FF Acquisition, L.L.C.</u>, Opposition No. 91/182,173 (TTAB Apr. 17, 2009). Odom's opposed the registration of FF's mark, alleging likelihood of confusion with its own marks. We affirm.

BACKGROUND

Odom's produces food items, such as sausages and breakfast sandwiches, distributed primarily through retail grocery stores. Over the past forty years it has obtained a number of trademark registrations depicting farm boys to designate its products.[*] The farm boys in the various marks resemble the examples below.





FF does business as Farm Fresh Supermarket and operates grocery stores. In 1983, FF registered a design of the head and shoulders of a farm boy with a piece of straw in his mouth to designate its supermarket services. See U.S. Trademark Registration No. 1,222,958 (Jan. 4, 1983). It altered the design in a 2003 renewal of the registration, but the mark still depicted the upper portion of a farm boy with a piece of straw in his mouth. In 2007, FF filed an application for a new mark for use in its retail grocery store services. See U.S. Trademark Application Serial No. 77/148,503 (Apr. 4,

---

[*] In its Notice of Opposition, Odom's relied on eleven trademark registrations, U.S. Trademark Registration Nos. 885,136 (Jan. 27, 1970); 887,577 (Mar. 10, 1970); 1,859,824 (Oct. 25, 1994); 1,861,064 (Nov. 1, 1994); 2,653,431 (Nov. 26, 2002); 2,850,472 (June 8, 2004); 3,019,156 (Nov. 29, 2005); 3,019,210 (Nov. 29, 2005); 3,031,104 (Dec. 20, 2005); 3,200,845 (Jan. 23, 2007); and 3,200,875 (Jan. 23, 2007).

2007). The new mark uses the head and shoulders of the farm boy depicted in the existing mark and added the remainder of the boy's body, as reproduced here.



Odom's opposed FF's new mark on the ground that it resembles the marks registered and used by Odom's and would therefore be likely to cause prospective consumers to be confused, mistaken, or deceived within the meaning of Section 2(d) of the Lanham Act. 15 U.S.C. § 1052(d) (2006). FF moved for summary judgment, arguing that there is no likelihood of confusion between the marks. The board found that FF's applied-for mark was so dissimilar to Odom's pleaded marks that no likelihood of confusion could exist as a matter of law. The board therefore granted summary judgment in favor of FF and dismissed Odom's opposition. Odom's appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

Summary judgment is appropriate where the movant has established that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc., 971 F.2d 732, 734 (Fed. Cir. 1992). We review the board's decision to grant summary judgment de novo. Id.

As an initial matter, Odom's argues that the board's analysis inappropriately considered only its registered marks and failed to consider uses of its marks that differ

in some respect from what is depicted in the registrations—in particular Odom's Tennessee Pride Farmboy mascot. According to Odom's, the differences between the registered marks and its actual uses of the marks "are highly significant" in the context of the similarity analysis. To the extent that a use of Odom's marks is sufficiently distinct from the registered marks that it could cause confusion where the registered marks do not, the use represents a separate, unregistered mark. In re Int'l Flavors & Fragrances, Inc., 183 F.3d 1361, 1368 (Fed. Cir. 1999) ("[T]he mark, as registered, must accurately reflect the way it is used in commerce so that someone who searches the registry for the mark, or a similar mark, will locate the registered mark.").

While it is correct that a mark need not be registered in order to grant its owner trademark protection, Odom's did not plead before the board that FF's applied-for mark was confusingly similar to unregistered marks owned by Odom's. Instead, its notice of opposition discussed only registered marks. The board was therefore not required to consider any unregistered marks in its analysis. Odom's argues that it relied on the mascot in its response in opposition to FF's motion for summary judgment and that the board should have deemed the pleadings amended by consent of the parties. The board's procedures allow it to deem the pleadings to have been amended to include unpled issues under certain circumstances, but the language is permissive and does not require the board to do so. Trademark Trial and Appeal Board Manual of Procedures § 528.07(b) ("[T]he Board may deem the pleadings to have been amended, by agreement of the parties, to allege the matter." (emphasis added)).

Sufficient distinctions exist between the registered marks considered by the board and the applied-for mark to create a different commercial impression. The marks

differ in the size and shape of the boys' hands and feet, the shape and style of their hats, and the fact that FF's boy has a piece of straw in his mouth and shoes on his feet while Odom's has neither. Odom's complains that the board inappropriately dissected the marks into these components in performing its analysis, but it is these individual aspects that collectively create a difference in the overall impressions made by the marks. In re Nat'l Data Corp., 753 F.2d 1056, 1058 (Fed. Cir. 1985) ("[I]n articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark . . . ."). As the board correctly concluded, the visual distinctions between the marks at issue here create unquestionably different commercial impressions, thereby precluding a finding of likelihood of confusion.

Odom's also argues that the board erred in basing its decision on the dissimilarity of the marks alone and not giving appropriate consideration to the other factors constituting the test for likelihood of confusion set forth in In re E. I. DuPont DeNemours & Co., 476 F.2d 1357, 1361 (CCPA 1973).[**] However, a single DuPont factor "may be dispositive in a likelihood of confusion analysis, especially when that single factor is the

[**] The DuPont factors are: (1) the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; (2) the similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use; (3) the similarity or dissimilarity of established, likely-to-continue trade channels; (4) the conditions under which and buyers to whom sales are made; (5) the fame of the prior mark; (6) the number and nature of similar marks in use on similar goods; (7) the nature and extent of any actual confusion; (8) the length of time during and conditions under which there has been concurrent use without evidence of actual confusion; (9) the variety of goods on which a mark is or is not used; (10) the market interface between applicant and the owner of a prior mark; (11) the extent to which applicant has a right to exclude others from use of its mark on its goods; (12) the extent of potential confusion; and (13) any other established fact probative of the effect of use. DuPont, 476 F.2d at 1361.

dissimilarity of the marks." <u>Champagne Louis Roederer, S.A. v. Delicato Vineyards</u>, 148 F.3d 1373, 1375 (Fed. Cir. 1998). Therefore, even if all other relevant <u>DuPont</u> factors were considered in Odom's favor, as the board stated, the dissimilarity of the marks was a sufficient basis to conclude that no confusion was likely.

CONCLUSION

Accordingly, the decision of the board is affirmed.

<u>AFFIRMED</u>