THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

Lembree

September 23, 2024

Opposition No. 91284247

*Monster Energy Company*

*v.*

*Herman Jones*

**Before Zervas, Greenbaum, and Elgin,**
**Administrative Trademark Judges.**

**By the Board:**

This opposition proceeding includes counterclaims filed by Applicant/ Counterclaim-plaintiff ("Applicant") against two of Opposer/Counterclaim- defendant's ("Opposer") pleaded registrations. Applicant now seeks summary judgment on his nonuse counterclaims which focus on some of the services identified in the two registrations subject to Applicant's counterclaims.[1] Also pending is a

---

[1] 15 TTABVUE. Citations to the record or briefs in this order are to the publicly available documents in the Board's online docketing system, TTABVUE. The number preceding TTABVUE corresponds to the docket entry number; the number(s) following TTABVUE refer(s) to the page number(s) of that particular docket entry, if applicable. The Board expects the parties to cite to the record using TTABVUE, particularly when referring to the evidentiary record in final briefs. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 801.03 (2024); *Made in Nature, LLC v. Pharmavite LLC*, Opp. No. 91223352, 2022 WL 2188890, at *8 (TTAB 2022).

As part of an internal Board pilot citation program on broadening acceptable forms of legal citation in Board cases, citations in this order are in a form provided in TBMP § 101.03. This order cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court

motion for leave to file an amicus brief filed by George Washington University Law School Intellectual Property & Technology Law Clinic ("GWULC").[2] Opposer has contested both motions, and both are fully briefed. Applicant also submitted, on August 8, 2024, a notice of supplemental authority to which Opposer submitted, on August 29, 2024, a response.[3]

## I.    Background

On January 20, 2022, Applicant filed an application to register the standard character mark MONSTER SQUAD DEL MAR on the Principal Register for "Training services in the field of Health and Wellness/fitness" in International Class 41.[4]

On March 31, 2023, Opposer filed a notice of opposition asserting the ground of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), relying upon, inter alia, its Registration No. 5551192 for the standard character mark

---

of Customs and Patent Appeals by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For orders and decisions of the Board, this order employs citations to the Westlaw (WL) database and cites only precedential decisions. To facilitate research, the proceeding or application number for cited Board decisions is provided. Decisions and orders issued before 2008, however, may not be available in TTABVUE. Practitioners should adhere to the practice set forth in TBMP § 101.03.

[2] GWULC provides its proposed brief, with exhibits. 20 TTABVUE 7-149. *See* TBMP § 538.

[3] 29, 30 TTABVUE. Applicant's notice notifies the Board of a precedential Board decision issued after Applicant's motion for partial summary judgment was briefed, and a description of the relevance of that decision to issues raised in his motion. Opposer contests the relevance of the decision to the issues before the Board. The Board has taken the decision identified in Applicant's submission, *In re Weiss*, Ser. No. 88621608, 2024 WL 3617597 (TTAB 2024), into account in rendering its determination herein. *See Omega SA (Omega AG) (Omega Ltd.) v. Alpha Phi Omega*, Opp. No. 91197504, 2016 WL 1642738, at *1, n.2 (TTAB 2016); *see also* TBMP 528.05(a)(1).

[4] Application Serial No. 97230238 was filed under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). "DEL MAR" is disclaimed.

MONSTER ARMY and Registration No. 5551230 for the composite word-and-design mark M MONSTER ARMY, pictured below[5] (collectively, the "Counterclaimed Registrations").



Registration No. 5551192 arose out of an application filed November 16, 2015 under Trademark Act Section 1(b), 15 U.S.C. § 1051(b), and Registration No. 5551230 arose out of an application filed February 12, 2016 under Section 1(b). The applications were published for opposition October 25, 2016. Following various extensions, the time to file a statement of use for each of the applications was extended to December 20, 2018. The two Counterclaimed Registrations registered on the Principal Register on August 28, 2018, for certain clothing goods in International Class 25 and the following services in International Class 41:

> Providing a web site featuring entertainment information and news on athletes; organizing and conducting educational programs and activities in the nature of classes, workshops, and sports competitions for athletes in the field of athlete development; athlete development program, namely, athlete

---

[5] According to the registration: "The mark consists of a bird with outspread wings with a shield over its chest bearing a stylized letter 'M' with the word 'MONSTER ARMY' written between two five-pointed stars on a ribbon below the shield. The bottom of the bird and three five-pointed starts [sic] appear below the ribbon." Color is not claimed as a feature of the mark.

training and mentoring in the field of wake, ski, surf, snowboard, motocross, mountain bike, BMX, and skate.

On May 10, 2023, Applicant filed counterclaims against each of the Counterclaimed Registrations asserting, inter alia, nonuse for the International Class 41 services prior to the expiration of the time for filing the statements of use. *See* Sections 1(c)-(d) and 14(1) of the Trademark Act, 15 U.S.C. §§ 1051(c)-(d), 1064. Opposer denied the salient allegations of Applicant's counterclaims and asserted several affirmative defenses, addressed below.[6]

On March 13, 2024, Applicant filed the instant motion for partial summary judgment on its nonuse counterclaims against the Counterclaimed Registrations with respect to "Providing a web site featuring entertainment information and news on athletes; organizing and conducting educational programs and activities in the nature of classes, workshops, and sports competitions for athletes in the field of athlete development; athlete development program, namely, athlete training . . . in the field of wake, ski, surf, snowboard, motocross, mountain bike, BMX, and skate" ("Contested Services").

The same day, GWULC filed a motion for leave to file an amicus curiae brief "to support a motion for partial summary judgment of [Applicant's] counterclaims."[7] Opposer contests the motion and GWULC filed a reply.[8]

---

[6] Answer to Counterclaim, 8 TTABVUE. *See also* Section IV., *infra*.

[7] 20 TTABVUE 3. GWULC attaches "notices of reliance" to its proposed brief. *Id*. at 32-46. Notices of reliance are filed by parties during their testimony periods, *see* Trademark Rule 2.122(g), 37 C.F.R. § 2.122(g), and are not available as a means to introduce exhibits to proposed amicus briefs.

[8] 22 and 26 TTABVUE.

### II. Motion for Leave to File Amicus Brief

Non-parties seeking to file an amicus brief should file a motion for leave to do so, preferably with the proposed brief.[9] TBMP § 538. "The privilege of being heard amicus rests in the discretion of the . . . Board," *see Harjo v. Pro-Football Inc.*, Can. No. 92021069, 1998 WL 90884, at *3 (TTAB 1998), and the granting of a motion for leave to file an amicus brief is rare, TBMP § 538. *See also* TBMP § 801.04. In exercising its inherent discretion, the Board will determine whether the proposed brief will aid the Board in "resolving doubtful issues of law," *Harjo*, 1998 WL 90884, at *3 (citing *Leigh v. Engle*, 535 F. Supp. 419, 419 (N.D. Ill. 1982)), as opposed to providing a highly partisan viewpoint or account of the facts, providing prejudicial material, or amounting to unneeded or redundant briefing. *Id*. at *3, 4 (citing *Leigh*, 535 F. Supp. at 419, and *Gandee v. Glaser*, 785 F. Supp. 684 (S.D. Ohio 1992)); *see also* TBMP § 538. "Historically, the term [amicus] refers to one who interposes in a judicial proceeding to provide impartial information on matters of law about which there was some doubt." *Harjo,* 1998 WL 90884, at *3 (citations omitted).

In support of its motion, GWULC states that it has no affiliation with Applicant and "often works with individuals in trademark disputes and filings."[10] GWULC contends that its proposed brief presents "arguments of law relating to trademark

---

[9] To avoid delay in proceedings, a proposed amicus brief preferably will be filed within the time allowed the party whose position the brief serves to support. *See* TBMP § 538. Consequently, as a practical matter, filing the proposed brief with an amicus' motion for leave to so file is preferred. However, upon consent of the parties or upon motion granted by the Board for good cause, the Board may permit a later filing of an amicus brief. *See* TBMP § 538. *Cf*. Federal Circuit Rule 29(a)(6).

[10] 20 TTABVUE 3.

bullying, abusive enforcement of service mark registrations, likelihood of confusion, and public policy issues that will aid the Board in resolving this case" and "argue[s] [uncontested] factual matters in support of Applicant."[11]

In response to the motion, Opposer argues that GWULC's proposed brief is not "impartial," but rather has a stated purpose of "address[ing] '[Opposer's] abuse of the trademark opposition process'"[12] and accuses Opposer of "act[ing] as a trademark bully."[13] Moreover, Opposer argues that GWULC's proposed brief largely addresses matters irrelevant to the instant motion for partial summary judgment and fails to address Applicant's nonuse counterclaims at issue in the motion.[14] Opposer further asserts that it will be prejudiced by GWULC's purported additional evidence.[15]

Other than the circumstantial fact that GWULC made its 149-page filing on the same day that Applicant filed his motion, there is no indication that GWULC sought concurrence from Applicant; and, Applicant has not commented on GWULC's motion.

In its reply, GWULC counters that "impartiality" need not require lack of support for a particular party and that any prejudice to Opposer may be countered by the Board's ability to decline to consider any "issues . . . [not] germane to the motion for summary judgment."[16]

---

[11] *Id.*

[12] 22 TTABVUE 4 (quoting GWULC's motion at 20 TTABVUE 8).

[13] *Id.* at 5 (quoting GWULC's motion at 20 TTABVUE 10).

[14] *Id.* at 5, 6.

[15] *Id.* at 6.

[16] 26 TTABVUE 3-4 (citing the Board's March 15, 2024 suspension order).

We find that GWULC's proposed brief is replete with partisan argument,[17] and otherwise does not aid us in resolving any "doubtful" issues of law concerning Applicant's motion for partial summary judgment. *See Harjo*, 1998 WL 90884, at *3 ("An *amicus curiae* does not provide a highly partisan account of the facts or advocate a point of view so that a cause may be won by one party or another, but rather aids the court in resolving doubtful issues of law.") (citations omitted). The nonuse issues before us are straightforward and of the type the Board considers on a regular basis. GWULC's proposed brief and its exhibits do not address issues of law which are not already adequately briefed by the parties. Rather, Applicant tries to paint Opposer as a bad actor – a trademark bully – that is not entitled to relief here because of the alleged bullying.[18] *See id.*, at *4 ("the issues have been adequately addressed [by the

---

[17] For example, GWULC asserts that the services recited in the Counterclaimed Registrations "are merely activities that leverage [Opposer's] fame in other classes to promote the sale of [Opposer's] energy drinks," 20 TTABVUE 24, that "[t]he 'MONSTER ARMY' website is merely advertising," *id.* at 25, that "[Opposer] is evidently the 'real beneficiary' of the 'MONSTER ARMY' program," *id.* at 27, that "[c]onsumers understand it as that – a promotion," *id.*, and that "[Applicant has a] 20-year-old common law trademark," *id.* at 28, all of which are factual conclusions disputed by the parties.

[18] Even if "trademark bullying" allegations were properly before the Board, GWULC and the parties are advised that registrants are permitted to protect their rights in their registered marks and to plead likelihood of confusion to preclude the registration of what they believe to be confusingly similar marks. *See DoorDash, Inc. v. Greenerside Holdings, LLC*, Opp. No. 91285160, 2024 WL 2723179, at *2-3 (TTAB 2024) (striking unclean hands affirmative defense based on "trademark bullying" and stating "The Trademark Act does not refer to 'trademark bullying' explicitly or even implicitly."). Moreover, rather than using potentially judgmental phrasing of "bullying" or "bullies," both Congress and the United States Department of Commerce have utilized the phrasing: "litigation tactics the purpose of which is to enforce trademark rights beyond a reasonable interpretation of the scope of the rights granted to the trademark owner." Trademark Technical and Conforming Amendment Act of 2010, Pub. L. 111-295, sec. 6(h), § 4(a)(1), 124 Stat. 3180, 3181 (amending Pub. L. 111-146); U.S. Dept. of Comm., Report to Congress: Trademark Litigation Tactics and Federal Government Services to Protect Trademarks and Prevent Counterfeiting, at 15, n.51 (April 2011), available at https://www.uspto.gov/sites/default/files/trademarks/notices/Trademark LitigationStudy.pdf (last accessed Sept. 23, 2024) (USPTO request for comment was

7

parties] without need for additional assistance from *amici*"); *see also Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (denying motion for leave to file amicus brief where amicus brief would effectively lengthen the brief of petitioner while "add[ing] nothing to the already amply proportioned brief of the petitioner").

GWULC's proposed brief also urges us to sua sponte issue an order to show cause for imposition of sanctions against Opposer under Fed. R. Civ. P. 11[19] in the nature of "sanction[ing Opposer] and cancel[ing] its marks,"[20] based on, inter alia, GWULC's allegations that "[Opposer] is quite prolific in its assertion of baseless opposition claims,"[21] and that several likelihood of confusion factors favor Applicant.[22]

GWULC, as a non-party, may not move for (1) sanctions, (2) an order to show cause for the imposition of sanctions, or (3) dismissal of Opposer's opposition. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, "Procedural Aspects of Rule 11 Motions – Initiation and Timing of Sanction Proceedings," 5A FEDERAL PRACTICE & PROCEDURE § 1337.1 (4th ed. June 2024 Update) (and cases cited therein) ("As a general rule, only parties to an action and certain other participants (such as

---

"amended to remove the terminology 'bullies' and 'bullying,' as it was determined that it was more appropriate to use the language appearing in the Trademark Technical and Conforming Amendment Act of 2010; namely, 'litigation tactics'").

[19] *See* 20 TTABVUE 29.

[20] *Id.* at 27.

[21] *Id.* at 14.

[22] *Id.* at 17-20. *See also id.* at 9 ("the Board should reject [Opposer's] opposition to [Applicant's] mark"); *id.* at 17 ("this Board should apply the same [likelihood of confusion] analysis to this case as it did in [prior Board proceedings in which Opposer's likelihood of confusion claims were dismissed]").

subpoenaed witnesses or nonparties resisting impleader) in the litigation have standing to move for sanctions under Rule 11."); *see also New York News, Inc. v. Kheel*, 972 F.2d 482, 489 (2d Cir. 1992) (non-party attorney appearing in body of complaint may not intervene in a case in order to pursue the imposition of Rule 11 sanctions against a party to the litigation, which may create unwieldy satellite litigation and frustrate the rule's goal of more effective operation of the pleading regimen); *Pinpoint IT Servs., L.L.C. v. Atlas IT Export Corp.*, 802 F.Supp.2d 691, 693-94 (E.D. Va. 2011) (denying non-party motion for sanctions for lack of standing based on movant being neither an "involuntary participant in this case" nor "named as a potential defendant," exceptions made by some courts to the "general rule" that only parties may move for sanctions). *Cf. Nyer v. Winterthur Intern.*, 290 F.3d 456, 459-60 (1st Cir. 2002) (as an exception to the general rule that non-parties to a case may not bring a motion for sanctions, non-party insurer, named in proposed amended complaint, had standing to move for sanctions where insurer "was forced to prepare a possible defense").

Further, it is settled that a Rule 11 motion "is a serious accusation of misconduct with specific procedural requirements, and should not be employed as a throwaway argument reflecting a party's belief that the adverse party will be unable to prove its claims (or defenses)." *Lewis Silkin LLP v. Firebrand*, Can. No. 92067378, 2018 WL 6923002, at *7 (TTAB 2018). Moreover, any motion for Rule 11 sanctions must be filed separately from any other filing and must comply with the safe harbor provision of Fed. R. Civ. P. 11(c)(2). *See Penthouse Digital Media Prods. Inc. v. Cloudstreet Inc.*,

Can. No. 92049926, 2010 WL 6888960, at *2, n.6 (TTAB 2010); 37 C.F.R. § 11.18(c) ("Violations of any of paragraphs (b)(2)(i) through (iv) of this section are, after notice and reasonable opportunity to respond…").

In view thereof, GWULC's motion for leave to file an amicus brief in support of Applicant's motion for partial summary judgment is **denied**.

### III. Motion for Partial Summary Judgment

A motion for summary judgment is a pretrial device intended to save the time and expense of a full trial when the moving party is able to demonstrate, prior to trial, that there is no genuine dispute of material fact, and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562-63 (Fed. Cir. 1987); *Kimberley Kampers IP Pty Ltd v. Safiery Pty Ltd*, Can. No. 92074422, 2022 WL 16708341, at *1 (TTAB 2022).

A factual dispute is genuine if, on the evidence of record, a reasonable fact finder could resolve the matter in favor of the nonmoving party. *See Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 849-50 (Fed. Cir. 1992). The evidence must be viewed in a light most favorable to the nonmoving party, and all reasonable inferences are to be drawn in the nonmovant's favor. *Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 767 (Fed. Cir. 1993). The Board does not resolve disputes of material fact on summary judgment but rather only ascertains whether disputes of material fact exist. *See Univ. Book Store v. Univ. of Wis. Bd. of Regents*, Opp. No. 91084223, 1994 WL 747886, at *4 (TTAB 1994); *see also Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). If the moving party is able to meet its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of specific genuinely disputed facts that must be resolved at trial. *See Enbridge, Inc. v. Excelerate Energy LP*, Opp. No. 91170364, 2009 WL 3541047, at \*3 (TTAB 2009).

## A. Applicant's Statutory Entitlement to Maintain Counterclaims

Entitlement to a statutory cause of action under Section 13 of the Trademark Act must be established in every Board opposition proceeding. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 1303 (Fed. Cir. 2020). Applicant's entitlement to maintain the counterclaims is inherent by virtue of his position as defendant in this proceeding. *See Harry Winston, Inc. v. Bruce Winston Gem Corp.,* Opp. No. 91153147, 2014 WL 3686875, at \*9 (TTAB 2014) ("Applicant has standing based on opposers' assertion of their marks and registrations against applicant in their notice of opposition.").

## B. Applicant's Nonuse Counterclaims

To prevail on his counterclaims of nonuse on summary judgment, Applicant must establish that there is no genuine dispute of material fact that Opposer had not used the MONSTER ARMY marks in commerce on all or some of the services identified in the Counterclaimed Registrations prior to the expiration of the deadline for filing the respective statements of use. *See Tao Licensing, LLC v. Bender Consulting Ltd,* Can. No. 92057132, 2017 WL 6336243, at \*7, 12 (TTAB 2017); *Embarcadero Techs., Inc. v.*

*Delphix Corp.*, Opp. No. 91197762, 2016 WL 462869, at *7 (TTAB 2016) ("[T]he actual filing of a statement of use does not cut off the deadline for meeting the requirements for a statement of use," so the focus in a nonuse claim is whether the mark was in use as of the deadline to file a statement of use). A mark is used in commerce on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce. Trademark Act Section 45, 15 U.S.C. § 1127; *see also Aycock Eng'g Inc. v. Airflite Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009).

Applicant contends that partial summary judgment on his nonuse counterclaims is appropriate because Opposer's Contested Services are "nothing more than ordinary and routine activity for the promotion of Opposer's own products: energy drinks."[23] With respect to the "athlete development program, namely, athlete training . . . in the field of wake, ski, surf, snowboard, motocross, mountain bike, BMX, and skate" portion of the Contested Services, Applicant contends that partial summary judgment is appropriate because "Opposer has produced no evidence in discovery that it has ever trained athletes under the [marks of the Counterclaimed Registrations],"[24] and because the Contested Services have never been advertised or sold.[25]

Although the Trademark Act defines a "service mark," 15 U.S.C. § 1127, "[t]he Trademark Act itself provides no definition of a 'service.'" *In re Dr Pepper*, 836 F.2d 508, 509 (Fed. Cir. 1987); *see also In re Canadian Pac., Ltd.*, 754 F.2d 992, 994 (Fed.

---

[23] 15 TTABVUE 5.

[24] *Id.*

[25] *Id*. at 4. Opposer does not contest that it "does not charge a fee for its [services provided under the Counterclaimed Registrations]." 23 TTABVUE 14, ¶ 19 (Opposer's response to Applicant's statement of undisputed facts).

Cir. 1985); *Blizzard Entm't, Inc. v. Ava Labs, Inc.*, Opp. No. 91285851, 2024 WL 3467057, at *4 (TTAB 2024). However, the following criteria have evolved for determining what constitutes a service: (1) a service must be a real activity; (2) a service must be performed to the order of, or for the benefit of, someone other than the applicant; and (3) the activity performed must be qualitatively different from anything necessarily done in connection with the sale of the applicant's goods or the performance of another service. *Blizzard Entm't*, 2024 WL 3467057, at *4 (citing *Canadian Pac.*, 754 F.2d at 994); *In re Husqvarna AB*, Ser. No. 78899587, 2009 WL 2138972, at *2 n.3 (TTAB 2009); *Carefirst of Md., Inc. v. FirstHealth of the Carolinas Inc.*, Opp. No. 91116355, 2005 WL 2451671, *11 (TTAB 2005)). *See also In re Dr Pepper*, 836 F.2d at 509-511. If the activity is done primarily for the benefit of others, the fact that the applicant also derives a benefit is not fatal, although if the activity primarily benefits applicant, it is not a registrable service even if others derive some benefit. *See Blizzard Entm't,* 2024 WL 3467057, at *4. That an activity is ancillary to an applicant's primary commercial activity, whether that be a principal service or the manufacturing and sale of various goods bearing its mark, does not in itself mean that it is not a separately registrable service; rather, consideration is given to whether the putative services are necessary, mandatory, or required in the operation of the primary commercial activity. *See id.* at *5.

Upon careful consideration of the parties' arguments and evidence, and drawing all justifiable inferences in favor of Opposer as the non-movant, we find that Applicant has not met its burden of demonstrating that there are no genuine disputes

of material fact for trial and that Applicant is entitled to partial summary judgment under applicable law on Applicant's nonuse counterclaims on the services contested in Applicant's motion. With respect to the contested services of "athlete training . . . in the field of wake, ski, surf, snowboard, motocross, mountain bike, BMX, and skate," we find there are, at minimum, genuine disputes of material fact regarding whether Opposer had, prior to December 20, 2018, both rendered and advertised the marks of the Counterclaimed Registrations given the evidence of, inter alia, the provision of "training . . . related to handling the pressures of competition" by the Senior Manager in the "MONSTER ARMY® Athlete Development Program" ("Program") to Opposer's putative consumers;[26] "access to . . . competitions to further hone [Opposer's putative consumers'] skills";[27] the holding of a "MONSTER ARMY Recon Tour BMX Contest" for Opposer's putative consumers;[28] putative consumers who "credit the Program with helping [them] reach [their] athletic potential which enables [them] to progress

---

[26] *See, e.g.,* 24 TTABVUE 15, ¶ 1 (Decl. of Christopher Stumbles, stating his position as Senior Manager in the Program since 2012); *id*. at 22, ¶ 4 (Decl. of Lucas Foster, snowboard athlete in the Program in at least 2014) ("as part of the Program, Christopher [Stumbles] provides me with training . . . related to handling pressures of competition"; *id*. at 32, ¶ 4 (Decl. of Connor Ladd, ski athlete now over eighteen years old who joined the Program at age thirteen) (same); *id*. at 52, ¶ 4 (Decl. of Jeremy Malott, BMX athlete in the Program in at least 2015) (same).

[27] *Id*. at 18, ¶ 13 (Stumbles Decl.) ("[Opposer] provides athletes with access to . . . competitions to further hone their skills.").

[28] 23 TTABVUE 166 (March 2, 2013 news article stating, "The Monster Army Recon Tour BMX Contest kicks off on March 16, 2013").

to a higher level of competition and succeed in competitions";[29] and advertising materials using the involved marks in connection with the services.[30]

In addition, at minimum, we find there are genuine disputes of material fact as to whether any of the Contested Services, prior to December 20, 2018, had been performed to the order of, or for the benefit of someone other than Opposer and have been qualitatively different from anything necessarily done in connection with the sale of Opposer's goods.[31] In particular, the determination of whether an activity constitutes the rendering of a service to others or necessarily done in connection with the sale of particular goods is a fact intensive issue. *See, e.g., In re U.S. Tobacco Co.*, Ser. No. 300198, 1986 WL 83321, at *2 (TTAB 1986); *In re Heavenly Creations Inc.*,

---

[29] *See, e.g.,* 24 TTABVUE 23, ¶ 7 (Foster Decl.); *id.* at 32, ¶ 7 (Connor Ladd Decl.); *id.* at 52, ¶ 6 (Malott Decl.).

[30] *See, e.g.*, 16 TTABVUE 125 (Jan. 17, 2012 "WayBack Machine" screenshot from the URL www.monsterarmy.com/about) ("The Monster Army headquarters provides a central point for soldiers to make the transformation from regular athletes to Monster Army Soldiers given them an edge on their competition."); *id.* at 135 (same URL on Jan. 8, 2018) ("The Monster Army is Monster Energy's athlete development program that supports athletes ages 13-21 in motocross, bmx, mountain bike, skate, surf, snow, and ski."); *id.* at 157 (same URL on May 7, 2013) (logo).

[31] *See, e.g.*, 23 TTABVUE 58, ¶ 19 (Decl. of Rodney Sacks, Chairman and Co-CEO of Opposer) ("The MONSTER ARMY Program services are not inherent to the sale and promotion of Monster's energy drinks. Monster uses numerous other methods to market itself."); 24 TTABVUE 22-23, ¶¶ 5, 7 (Foster Decl.) ("I have been featured on monsterarmy.com . . . which displays information relating to my background, career statistics, media mentions, and the contests I have competed in worldwide . . . This has helped me with increased exposure and building my brand. . . The support I have received from the Program makes it possible for me to continue in my career as a professional athlete."); *id.* at 52, ¶¶ 5, 6 (Malott Decl.) (same except "building my *personal* brand") (addition in italics); *id.* at 32-33, ¶¶ 5, 7 (Connor Ladd Decl.) (same except "This has helped me with increased exposure, building my brand, and has helped me obtain additional sponsorships with Head and Zipline Poles.").

Ser. No. 310027, 1971 WL 16427, at \*2 (TTAB 1971). Consequently, Applicant's motion for partial summary judgment is **denied**.[32]

## IV. Further Review: Opposer's Affirmative Defenses

We now address Opposer's affirmative defenses to the counterclaims[33] and find that its second through sixth affirmative defenses are deficiently pleaded.

Opposer alleges in support of its laches (second) and acquiescence (third) defenses that Applicant failed to challenge the Counterclaimed Registrations "[s]ince [Opposer] began using these marks in 2005."[34] However, because "[i]n an opposition or cancellation proceeding the objection is to the rights which flow from **registration** of the mark," *Nat'l Cable Television Ass'n v. Am. Cinema Eds., Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) (emphasis supplied, citations omitted), a plaintiff's purported knowledge of the defendant's mark based on the defendant's open **use** of its mark is insufficient to support either a laches or acquiescence defense. *See id.* (laches); *see also Krause v. Krause Publ'ns., Inc.*, Can. No. 92041171, 2005 WL 3175174, at \*13

---

[32] The fact that we have identified certain genuine disputes of material fact as sufficient bases for denying Applicant's motion for partial summary judgment should not be construed as a finding that these are necessarily the only issues that remain for trial. Additionally, the evidence submitted in connection with a motion for summary judgment or opposition thereto is of record only for consideration of that motion. Any such evidence to be considered at final hearing must be properly introduced in evidence during the appropriate trial period. *See Levi Strauss & Co. v. R. Joseph Sportswear Inc.,* Opp. No. 91081072, 1993 WL 444262, at \*1 n.2 (TTAB 1993), (TTAB 1993), *recon. den'd by* 1994 WL 857967 (TTAB 1995); *Pet Inc. v. Bassetti,* Opp. No. 91064582, 1983 WL 50176, at \*1 n.4 (TTAB 1983) (citations omitted). The parties may, however, stipulate that any or all of the summary judgment evidence be treated as properly of record for purposes of final decision. *See, e.g., Micro Motion Inc. v. Danfoss A/S,* Opp. No. 91093658, 1998 WL 988200, at \*1 n.2 (TTAB 1998).

[33] 8 TTABVUE.

[34] 8 TTABVUE 4-5 (laches and acquiescence affirmative defenses).

(TTAB 2005) (acquiescence). Consequently, Opposer's allegations of delay "since [Opposer] began **using** these marks"[35] fails to adequately assert unreasonable or inexcusable delay in asserting Applicant's counterclaims for cancellation of the Counterclaimed Registrations as opposed to, for example, a claim of trademark infringement. *See Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732, 734 (Fed. Cir. 1992) (laches is "tied to a party's registration of a mark, not to a party's use of the mark"); *see also IdeasOne Inc. v. Nationwide Better Health Inc.,* Can. No. 92049636, 2009 WL 663070, at *2 (TTAB 2009) (defense must provide fair notice of its basis). Moreover, Opposer fails to allege any prejudice from putative delay or any facts underlying the asserted "acts, failure to act, and/or omissions" of Applicant. *See Bridgestone/Firestone Rsch., Inc. v. Auto. Club de L'Ouest de la France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001) (with respect to the defense of laches, a defendant must plead, and ultimately bears the burden of proof to establish that, (1) there was undue or unreasonable delay by the plaintiff in asserting its rights, and (2) prejudice to defendant resulting from the delay); *see also Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, Opp. No. 91223982, 2020 WL 4673282, at *15 (TTAB 2020), *aff'd in part, vacated on other grounds in part*, 17 F.4th 129 (Fed. Cir. 2021) (acquiescence requires that (1) plaintiff actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused applicant undue prejudice);

---

[35] 8 TTABVUE 4-5 (emphasis supplied).

*IdeasOne*, 2009 WL 663070, at *2 (a properly pleaded defense must contain enough factual detail to provide fair notice of the basis for the defense).

Opposer's fourth defense (unclean hands) alleges that "Applicant is not the prior user and knowingly brought counterclaims fraudulently asserting that Applicant has priority."[36] Opposer's allegations of fraudulent conduct fail to meet the heightened pleading requirement of Fed. R. Civ. P. 9(b). *See Exergen Corp. v. Wal-Mart Stores Inc.,* 575 F.3d 1312, 1316, 1328-29 (Fed. Cir. 2009) (although intent to deceive the USPTO may be averred generally under Fed. R. Civ. P. 9(b), the pleadings must allege sufficient underlying facts from which the Board may reasonably infer that a party acted with the requisite state of mind). For Opposer's fifth defense (equitable estoppel), Opposer has not alleged any misleading conduct on the part of Applicant that reasonably led Opposer to infer that Applicant would not assert a counterclaim, nor has Opposer alleged that it relied upon any such conduct, causing material prejudice. *See Lincoln Logs,* 971 F.2d at 734 (elements of equitable estoppel). With respect to Opposer's sixth affirmative defense of waiver, Opposer has failed to plead that Applicant intentionally relinquished or abandoned his known rights. *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (elements of waiver).

Accordingly, each of the second through sixth defenses is **stricken** without prejudice to properly repleading them, *see IdeasOne*, 2009 WL 663070, at *2, within

---

[36] 8 TTABVUE 5.

**15 days of the date of this order**, failing which they will not be considered further.[37]

In addition, we find that Opposer's first affirmative defense asserting that Applicant's counterclaims fail to state a claim upon which relief may be granted,[38] and Opposer's unnumbered, ending defense reserving its right to identify additional defenses at a later date,[39] are **stricken with prejudice**. *See Sabhnani v. Mirage Brands, LLC*, Can. No. 9206808, 2021 WL 6072822, at *1, n.5 (TTAB 2021) (failure to state a claim not an affirmative defense). *See also Philanthropist.com, Inc. v. Gen. Conf. Corp. of Seventh-Day Adventists*, Can. No. 92065178, 2021 WL 2472776, at *2 n.6 (TTAB 2021), *aff'd mem.*, 2022 WL 3147202 (Fed. Cir. 2022) (reservation of right to plead unidentified defenses fails to provide fair notice of the defenses).

---

[37] If repleaded, laches and acquiescence are not applicable to Applicant's counterclaims based on abandonment and nonuse prior to the deadline to file a statement of use. *See Saint-Gobain Abrasives, Inc. v. Unova Indus. Automation Sys., Inc.*, Opp. No. 91150173, 2003 WL 880554, at *5 (TTAB 2003) (the equitable defenses of laches and acquiescence are not available against claims of, inter alia, abandonment); *see also W. D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, Can. No. 92008112, 1965 WL 7807, at *4 (TTAB 1965), *aff'd*, 377 F.2d 1001 (CCPA 1967) (it is within the public interest to have registrations which are void ab initio stricken from the register ); *NT-MDT LLC v. Kozodaeva*, Can. No. 92071349, 2021 WL 1748458, at *6 (TTAB 2021) (A registration that issues from an application based on an intent to use the mark in commerce under Trademark Act Section 1(b) is void ab initio if the mark was not in use in commerce in connection with the goods identified in the application at the time the amendment to allege use was filed or prior to the expiration of the time for filing a statement of use.).

For clarity, that a registration more than five years old may not be challenged on the basis of nonuse is not inconsistent with the ground of nonuse being a "void ab initio" type of claim. *Thrive Natural Care Inc. v. Nature's Sunshine Prods., Inc*, Can. No. 92078465, 2023 WL 5287181, at *4 (TTAB 2023) (citing Trademark Act Section 14(3), 15 U.S.C. § 1064(3), and *Maids to Order of Ohio Inc. v. Maid-to-Order Inc.*, Can. No. 92040571, 2006 WL 936993, at *7, n.6 (TTAB 2006)).

[38] 8 TTABVUE 3.

[39] *Id.* at 6.

## V.    Schedule

Proceedings are resumed. Dates are reset as follows:

| | |
|---|---|
| Discovery Closes | **10/24/2024** |
| Pretrial Disclosures Due for Party in Position of Plaintiff in Original Claim | **12/8/2024** |
| 30-day Trial Period Ends for Party in Position of Plaintiff in Original Claim | **1/22/2025** |
| Pretrial Disclosures Due for Party in Position of Defendant in Original Claim and in Position of Plaintiff in Counterclaim | **2/6/2025** |
| 30-day Trial Period Ends for Party in Position of Defendant in Original Claim, and in Position of Plaintiff in Counterclaim | **3/23/2025** |
| Pretrial Disclosures Due for Rebuttal of Party in Position of Plaintiff in Original Claim and in Position of Defendant in Counterclaim | **4/7/2025** |
| 30-day Trial Period Ends for Rebuttal of Party in Position of Plaintiff in Original Claim, and in Position of Defendant in Counterclaim | **5/22/2025** |
| Pretrial Disclosures Due for Rebuttal of Party in Position of Plaintiff in Counterclaim | **6/6/2025** |
| 15-day Trial Period Ends for Rebuttal of Party in Position of Plaintiff in Counterclaim | **7/6/2025** |
| Opening Brief for Party in Position of Plaintiff in Original Claim Due | **9/4/2025** |
| Combined Brief for Party in Position of Defendant in Original Claim and Opening Brief as Plaintiff in Counterclaim Due | **10/4/2025** |
| Combined Rebuttal Brief for Party in Position of Plaintiff in Original Claim and Brief as Defendant in Counterclaim Due | **11/3/2025** |
| Rebuttal Brief for Party in Position of Plaintiff in Counterclaim Due | **11/18/2025** |
| Request for Oral Hearing (optional) Due | **11/28/2025** |

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be

submitted in accordance with Trademark Rules 2.128(a) and (b). Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).

**TIPS FOR FILING EVIDENCE, TESTIMONY, OR LARGE DOCUMENTS**

The Board requires each submission to meet the following criteria before it will be considered: 1) pages must be legible and easily read on a computer screen; 2) page orientation should be determined by its ease of viewing relevant text or evidence, for example, there should be no sideways or upside-down pages; 3) pages must appear in their proper order; 4) depositions and exhibits must be clearly labeled and numbered – use separator pages between exhibits and clearly label each exhibit using sequential letters or numbers; and 5) the entire submission should be text-searchable. Additionally, submissions must be compliant with Trademark Rules 2.119 and 2.126. Submissions failing to meet all of the criteria above may require re-filing. **Note:** Parties are strongly encouraged to check the entire document before filing.[40] The Board will not extend or reset proceeding schedule dates or other deadlines to allow time to re-file documents. For more tips and helpful filing information, please visit the ESTTA help webpage.

A copy of this order has been provided to:

CHARLES K. CRANE
efiling@knobbe.com, MEC.TTAB@knobbe.com

ANDREW J. DHUEY
ajdhuey@comcast.net

---

[40] To facilitate accuracy, ESTTA provides previews of each page before submitting.

LOLETTA DARDEN, MARCYA BETTS
loletta.darden@law.gwu.edu, marcya.betts@law.gwu.edu
annienguyen@law.gwu.edu, sarahllambert@law.gwu.edu